Filed 12/31/25  P. v. Lee CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C102207 |
| Plaintiff and Respondent, | (Super. Ct. No. CR20220988) |
| v. | |
| JEFFREY SCOTT LEE, | |
| Defendant and Appellant. | |

Defendant Jeffrey Scott Lee fatally stabbed his ex-girlfriend's boyfriend with an 18-inch sword during a confrontation that involved the boyfriend's pit bulls.  A jury found defendant guilty of second degree murder (Pen. Code, § 187, subd. (a)),[1] and also found that he personally used a deadly or dangerous weapon during the commission of the offense (§ 12022, subd. (b)(1)).  In a bifurcated proceeding, the trial court found true

---

[1]  Undesignated statutory references are to the Penal Code.

the allegations that defendant had a prior gang-related conviction (§ 186.22, subd. (a)) that qualified as a prior serious felony and strike prior under the three strikes law (§§ 667, subds. (a)(1), (c), and (e), 1192.7, subd. (c)(28)).  After granting defendant's request to dismiss the weapon enhancement and the prior serious felony enhancement under section 1385, the trial court sentenced defendant to a term of 15 years to life in prison for the murder, which was doubled under the three strikes law for a total indeterminate term of 30 years to life.

Defendant appeals, arguing reversal is required because his prior gang-related conviction (§ 186.22, subd. (a)) can no longer be used to increase his sentence--as a prior serious felony enhancement or strike prior under the three strikes law--due to the recent change in law effected by Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill No. 333), which narrowed liability for gang-related offenses by requiring more stringent evidentiary requirements for proving them.  Defendant further argues reversal is required because the prosecutor engaged in misconduct during closing argument.

We agree that in light of Assembly Bill No. 333, the trial court's true findings on the prior serious felony enhancement and the strike prior allegations must be reversed.  It is undisputed that there was insufficient evidence that defendant's prior gang-related conviction (§ 186.22, subd. (a)) satisfied the more stringent evidentiary requirements imposed by the change in law.  Therefore, the court erred in considering that conviction to double defendant's sentence.  Accordingly, we will vacate the sentence and remand the matter for further proceedings.  In all other respects, we will affirm the judgment.

## FACTUAL BACKGROUND

We briefly summarize the underlying facts.  Additional information relevant to the claims raised on appeal is set forth as necessary in the Discussion, *post*.

From 2019 to 2021, defendant dated A.H.  After they broke up, A.H. began dating Jack Knox in May 2021, although A.H. would still hang out with defendant and often be "intimate" with him.  According to defendant, Knox acted aggressively toward him on

2

several occasions after Knox and A.H. began dating, including pointing a gun at defendant and pulling out a knife (twice) and baton in his presence.[2] There was also an incident where Knox drove alongside defendant's car in an aggressive and dangerous manner and yelled at A.H., who was a passenger in defendant's car.

On April 5, 2022, firefighters from the West Sacramento Fire Department, including Captain Thomas Barnard, were dispatched to a call for service near the intersection of Drever Street and Soule Street. Upon their arrival, the firefighters found Knox lying face down in the street in a pool of blood near the driver's side door of a recreational vehicle (RV) that was parked under a freeway overpass. The RV had a significant amount of blood inside, the majority of which was in the front "cab area" on or near the driver's side, including so much blood spatter on the front windshield that the firefighters could "barely" see through it. Two of the RV's doors were open, the driver's door and one of the passenger side doors. There were no obvious signs of blood along the outside of the passenger side of the RV.

An aggressive pit bull standing near Knox prevented the firefighters from immediately rendering medical aid to him. After the dog was contained inside the RV, Captain Barnard observed a puncture wound to Knox's chest. Knox was treated at the scene and taken to the hospital. He died later that day.

The forensic pathologist who performed Knox's autopsy opined that he died from a stab wound to the chest that pierced the left side of his heart. The wound, which was vertical in shape and at least two-and-a-half inches deep, indicated that Knox had been stabbed by a "single-edge sharp instrument" in a downward angle that moved from left to right. At trial, the pathologist explained that a stab wound of this type would "bleed very quickly, very rapidly" and there would be "a lot of blood." The pathologist further

_____

[2] During one of the incidents when Knox pulled out a gun, Knox warned defendant that it would "get ugly" if defendant did not stay the "F" away from A.H.

3

explained that the "blood would come out with force" because the heart would still be beating and there would be "pressure there." Toxicology results revealed that Knox was intoxicated on methamphetamine at the time of his death.

Footage from private surveillance systems in the area showed defendant riding his bicycle towards the RV on the day Knox was stabbed. Defendant was wearing a backpack and had what appeared to be "an elongated object" strapped to his back or backpack, which was later determined to be an 18-inch sword. Defendant was arrested and taken into custody on the same day the stabbing occurred.

During his police interview,[3] defendant explained that he was in love with A.H. and that he went to the RV to check on her because she had sent a text message indicating that Knox had stabbed her in the eye. Defendant denied that he deliberately stabbed Knox, but admitted that he used a sword, which he later hid in a rural area near the RV, to defend himself from two pit bulls that attacked him at Knox's direction. When asked, defendant described the incident in question, including a physical demonstration of how he used the sword. Specifically, defendant explained that the incident occurred on the passenger side of the RV, that he swung the sword at Knox's dogs in a slashing manner to protect himself, that he had no intent to harm Knox with the sword, and that he did not believe he touched Knox with the sword, although he noted that Knox "went back or fell back" at one point during the incident.

At trial, there was evidence that Knox physically abused A.H., although A.H. did not testify. When defendant testified on his own behalf, he claimed that, at the time of the stabbing, A.H. wanted to reunite with him. Defendant also noted that he had used methamphetamine earlier that day. As for the stabbing, defendant explained that, upon his arrival at the RV, he set his bike down near the back of the RV on the passenger side,

---

[3] The recorded interview was played for the jury.

4

and that, as he was walking alongside the passenger side, he called out to A.H. after he heard a woman say something in a "heated" tone. The next thing defendant heard was Knox say, "Oh, shit. Get him mamas." Two pit bulls then ran toward defendant barking and growling from the front of the RV. In response, defendant kicked one of the dogs and then swung his backpack around between himself and the other dog and pulled out his sword. At the same time, defendant heard someone running from the back of the RV toward him. Defendant did not turn around to see who was approaching him, but instead told the person to "[g]et the fuck back" as he was swinging the sword at one of the dogs. When asked, defendant explained that he was on the passenger side of the RV, toward the front, when he was swinging the sword. He further explained that after he stabbed one of the dogs to force it to back up, he thrust his sword directly behind him--by "throwing" his right hand over his left shoulder with the sword in it--as the person on foot was approaching him. Defendant claimed he never saw Knox (or any other person) and did not know Knox was stabbed or harmed in any way. Upon further questioning, defendant said that he never went inside the RV but noted that a door in the middle of the passenger side of the RV was "all the way open." Defendant also explained that he hid the sword in some brush because he saw helicopters and did not want to be shot by the police.

A search of defendant's cell phone revealed that he repeatedly encouraged A.H. to break up with Knox. There were also text messages and messages sent via social media indicating hostility between defendant and Knox, including threats and invitations to fight. In one message, defendant told Knox that he was "coming" for him if his "bitch-ass" caused "anymore shit with the world." In other messages, defendant told Knox to stop physically abusing A.H. In one of those messages, defendant threatened to harm Knox's mother if Knox continued to hit A.H. And there was at least one incident where defendant told Knox in person to stop hitting A.H. and to keep his hands off of her.

At trial, the People's theory of liability was that defendant was guilty of first degree murder because he intentionally and deliberately stabbed Knox to "get rid of the

competition" over A.H. According to the People, defendant entered the RV through one of the passenger side doors and stabbed Knox in the chest while they were both inside the RV.

By contrast, the defense theory was that defendant stabbed Knox by accident outside the RV while he was trying to defend himself from the dogs, including swinging the sword at them. Defendant denied having any intent to kill Knox and denied ever seeing his sword touch Knox.

## DISCUSSION

Defendant raises two contentions on appeal, sentencing error and prosecutorial misconduct, which we discuss in turn next.

## I

### *Sentencing Error*

Defendant first argues reversal is required because his prior gang-related conviction (§ 186.22, subd. (a)) can no longer be used to impose an increased sentence due to the recent change in law effected by Assembly Bill No. 333. The Attorney General concedes the point. We agree with the parties.

A. *Relevant Legal Principles*

In 2021, the Legislature amended section 186.22 with the passage of Assembly Bill No. 333, enacting the STEP Forward Act of 2021. (Stats. 2021, ch. 699, § 1.) Effective January 1, 2022, Assembly Bill No. 333 changed the elements of gang-related offenses and enhancements by narrowing the definitions of "criminal street gang," "pattern of criminal activity," and "what it means for an offense to have commonly benefitted a street gang." (*People v. Tran* (2022) 13 Cal.5th 1169, 1206; see *People v. Rojas* (2023) 15 Cal.5th 561, 576 [explaining that the Legislature enacted Assembly Bill No. 333 "to narrow the definition of criminal street gang in order to focus on 'true gang-related crimes,' having determined that 'in practice the original definition of a criminal street gang was not narrowly focused on punishing true gang-related crimes' "].) In

6

*Tran*, our Supreme Court held that Assembly Bill No. 333 was ameliorative legislation that applies to nonfinal judgments under the rule of *In re Estrada* (1965) 63 Cal.2d 740. (*Tran*, at pp. 1206-1207.)

For purposes of the three strikes law and a prior serious felony enhancement under section 667, subdivision (a)(1), a serious felony is defined as any felony listed in subdivision (c) of section 1192.7. (§§ 667, subds. (a)(4), (d)(1) & 1170.12, subd. (b)(1).) That list includes "any felony offense, which would also constitute a felony violation of [s]ection 186.22." (§ 1192.7, subd. (c)(28).) This encompasses the substantive offense of active participation in a criminal street gang (§ 186.22, subd. (a)),[4] of which defendant was convicted in 2015. (See *People v. Briceno* (2004) 34 Cal.4th 451, 456, 462.)

Recently, in *People v. Fletcher* (2025) 18 Cal.5th 576, our Supreme Court decided an issue that had divided the Courts of Appeal: namely, whether Assembly Bill No. 333 "applies to a sentencing court's determination of whether a defendant's conviction under the prior version of section 186.22 qualifies as a prior serious felony conviction for purposes of prior serious felony enhancements and the Three Strikes law and, if so, whether its application constitutes an improper legislative amendment of a ballot initiative." (*Fletcher,* at p. 583.) After noting that the relevant statutes are not "paragons of clarity," the *Fletcher* court held that "where a defendant has suffered a conviction under the prior version of section 186.22, Assembly Bill [No.] 333 applies to the determination of whether the conviction qualifies as a prior serious felony conviction under subdivision (c)(28) of section 1192.7 for purposes of the Three Strikes law and

---

[4] Section 186.22, subdivision (a) provides: "A person who actively participates in a criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

prior serious felony enhancements." (*Fletcher*, at p. 583.) The court further held that Assembly Bill No. 333 "applies to the analogous determination under section 667(a) for . . . prior serious felony enhancements." (*Fletcher*, at p. 605.) Thus, Assembly Bill No. 333's amendments to section 186.22 "apply to the current determination of whether the prosecution has proven the prior serious felony enhancement allegations in this case." (*Fletcher*, at p. 605.) In other words, whether a prior conviction was for an offense that constitutes "a felony violation of Section 186.22" is determined by applying the current version of section 186.22. (*Fletcher*, at p. 607.)

B. *Analysis*

We agree with the parties that reversal is required. In May 2015, more than six years before the Legislature amended section 186.22 with the passage of Assembly Bill No. 333, defendant pleaded guilty to actively participating in a criminal street gang in violation of section 186.22, subdivision (a). Where, as here, Assembly Bill No. 333 applies retroactively to the determination of whether a prior gang-related conviction qualifies as a serious felony for purposes of the three strikes law and a prior serious felony enhancement (§ 667, subd. (a)(1)), we review for harmless error pursuant to *Chapman v. California* (1967) 386 U.S. 18. (See *People v. Tran, supra,* 13 Cal.5th at p. 1207.) Under *Chapman*, vacating a true finding is "required unless 'it appears beyond a reasonable doubt' that the [finding] would have been the same" under current law. (*Tran,* at p. 1207.) If "there is any reasonable possibility that the error might have contributed to the" finding, vacatur is required. (*People v. Lewis* (2006) 139 Cal.App.4th 874, 887.)

On this record, we cannot find harmless error. Like in *Fletcher*, here there is no indication in the record that defendant's 2015 gang-related conviction was obtained under Assembly Bill No. 333's more stringent evidentiary requirements. Defendant's prior conviction was based on his admission to the elements of section 186.22, subdivision (a) as they existed when he entered his guilty plea. At that time, the People were not required to prove, and defendant did not admit, the current evidentiary requirements of

8

that provision, as amended by Assembly Bill No. 333.  Under these circumstances, the appropriate remedy is to vacate the true findings on the allegations that defendant's prior gang-related conviction (§ 186.22, subd. (a)) qualifies as a prior serious felony for purposes of the three strikes law and the prior serious felony enhancement (§ 667, subd. (a)(1)) and remand the matter to the trial court to allow the People the opportunity to retry those allegations under current law, considering the elements of section 186.22 as amended by Assembly Bill No. 333.  (*People v. Fletcher*, *supra*, 18 Cal.5th at pp. 607-608.)

## II

### *Prosecutorial Misconduct*

Defendant next argues reversal is required because the prosecutor committed prejudicial misconduct during closing argument in violation of his state and federal constitutional rights to due process and a fair trial.  Specifically, defendant claims the prosecutor, in effect, improperly provided his personal opinion and misstated the facts when he told the jury that the *only way* defendant could have inflicted the fatal stab wound was to hold and move the sword a certain way, as the prosecutor physically demonstrated to the jury.  According to defendant, the prosecutor "erred" by arguing that his testimony as to how Knox was stabbed was not credible and had been made up to "comport" with the evidence defendant heard at trial.

A. *Additional Background*

Prior to closing argument, the jury was orally instructed on the applicable law, including the presumption of innocence and the definition of reasonable doubt.  The jury was also instructed on the concepts of direct and circumstantial evidence, and was specifically advised that it alone was responsible for judging the evidence and believability of the witnesses.

At the outset of closing argument, the prosecutor told the jury that nothing the attorneys said was evidence, that the remarks of the attorneys were only meant to help the

9

jurors in their deliberations, and that the jury was the sole "body" responsible for deciding the credibility of the witnesses. The prosecutor also told the jurors that, in making their findings, they could only consider the information "that came about through the testimony [of witnesses] or through [the] physical evidence." The prosecutor went on to urge the jury to find defendant guilty of first degree murder, arguing that the evidence showed that the killing was willful, deliberate, and premeditated.

In making this argument, the prosecutor pointed to evidence of motive; specifically, the text messages between defendant and Knox, which showed that they were "fighting over the affections" of A.H., and that there was "ill will" and "hostility" between them, including "harsh" language and threats of harm by defendant. The prosecutor also noted that defendant fled the scene after the stabbing, made false statements about the stabbing, and hid evidence (the sword), which showed a consciousness of guilt. As for the physical evidence, the prosecutor described how the blood inside the RV on the driver's seat and surrounding area (e.g., substantial blood spatter on the front windshield), was consistent with Knox being stabbed while he was inside the RV, and noted that, by contrast, there was no blood anywhere near the area outside the RV where defendant claimed he had possibly stabbed Knox. The prosecutor argued that, given the nature of the fatal stab wound (including its vertical shape, downward angle, and depth), it would have been very difficult for the wound to have been inflicted in the way defendant claimed for the first time at trial--by defendant thrusting his 18-inch sword over his left shoulder without looking behind him while Knox was standing behind defendant outside the RV.

In support of this argument, the prosecutor made the following remarks, the italicized portion of which defendant claims amounted to prosecutorial misconduct:

"[Defendant] [d]id not mention anything about stabbing behind him to a target he could not see [during his police interview]. He described a confrontation between him and Mr. Knox. Mr. Knox sicks [*sic*] the dogs on him. He is swinging the sword and then

10

Mr. Knox says, oh, shit and falls back. Okay. Where now is this version coming from with the stabbing behind? Well, he's had the benefit of sitting here and listening to testimony and looking at physical evidence and all the exhibits the People are putting in. So when it comes his turn to talk, he can now tailor that explanation to fit the physical evidence. Specifically he has a problem with that angle of blade. If he is thrusting and slashing and cutting at dogs as he initially described [(during his police interview)], that blade is going to be pointed down. The moment he stabs with it, that blade is pointed up. Remember he is holding it kind of reverse in the back of his forearm. If you extend that out, that is a stabbing implement. *So he needs to explain if he is doing this, how did the wound happen the way it happened? Well, if I'm holding the sword normally, there's only one way for turning that blade upside down and that's to do this. So he's comporting testimony that will come in line with the physical evidence that you're seeing.*"

After the trial court overruled defense counsel's "improper argument" objection, the prosecutor discussed certain legal concepts (reasonable doubt, burden of proof) and the elements of murder. He then argued that defendant was guilty of first degree murder, pointing to (again) defendant's motive, as evidenced by the hostile and threatening text messages defendant had sent to Knox before the stabbing.

As for how the killing occurred, the prosecutor explained the People's theory as follows: "So what's the motive? Get rid of the competition. [¶] So he does. He takes the sword, he goes to that RV, he enters in through one of the passenger side doors, mind you this door was open when paramedics got there, so he either went in that way or came out that way because we know that . . . Knox came out the other direction where he spilled out onto the ground. No blood anywhere in this area. [¶] The wound. Up close, personal, inmate. Blade oriented in a way in which it was stabbed into the body it would have been facing the right direction. The wound itself. Almost completely vertical in line with the body, slight angle to the right and down into the heart. Would have

11

happened somewhere in this area because you have all this spray.  Sword is removed, blood gushes out in the windshield area, drips down into the console, onto the floor, drips on his seat as Mr. Knox is trying to scamper his way across it to get out of the RV.  That's where he finds himself on the ground."

The prosecutor concluded his initial remarks to the jury by stating:  "So . . . what do we know?  Defendant's story changes over the years to be consistent with the evidence as he heard it here in trial.  [¶]  His behavior in words before, during and after the homicide show his intent and motive.  He went inside the RV which is supported by the physical evidence, the lack of blood in the area where he described he was versus the amount of blood in that passenger section.  Remember the blood was just dripping over on the floor, it wasn't over by the passenger door that was open, it was towards the center of the console.  That's where the incident would have happened.  And with that length of sword, [defendant] would have had to have been invited into the vehicle at the time.  He willfully, deliberately and with premeditation stabbed . . . Knox while facing him inside the RV.  The evidence supports the angle of the sword the way in which the blade enters the body, went down in a vertical direction slightly to the right, not consistent with this over the shoulder stabbing motion that he described to you.  [¶]  He tried to cover his tracks and denied involvement.  He's guilty of first degree murder and a deadly weapon enhancement.  And when you all go back into the deliberation room, I'm confident that you will find that to be the reasonable answer.  Thank you."

In response, defense counsel urged the jury to reject the People's theory and instead acquit defendant based on self-defense.[5]  In so doing, defense counsel made the

_____

[5] Without conceding guilt, defense counsel (alternatively) explained why a finding of first degree murder was not warranted if the jury did not find that defendant acted in self-defense.  In doing so, counsel discussed (among other things) imperfect self-defense, voluntary manslaughter, and involuntary manslaughter.

following remarks: "Remember what [the prosecutor] argued to you yesterday? . . . He said this was up close, intimate, personal. He described an overhanded stabbing down directly in front of him, directly into the chest of Mr. Knox in close quarters. And you heard the dimensions of the blade. I'm not going to pull the blade out, but I'm going to try and bring something that approximates it. So we have a . . . yard stick that I chopped down to be more appropriate. [¶] So the blade that you heard . . . described here is 18 inches long. . . . [The prosecutor's] theory of the case . . . is that [defendant] bikes over there, breaks in, holds this blade in this position, gets this up close and personal to Mr. Knox . . . and he's stabbing him like this, right. Stabbing him directly like that. And then in this position also at some point stabs down at the dogs like this. This close to Mr. Knox in the RV facing him and no blood whatsoever on his shirt? Nothing on him. That doesn't make sense. [¶] What is that more consistent with? It's more consistent with what [defendant] described that he's having to deal with these dogs outside the trailer, that he's in this close-quarter proximity to where the door is, he is focused on the dogs, which again you wouldn't be holding this thing when you're dealing with dogs next to you like this, right. That wouldn't make sense that you're poking down like you're gardening. You would be[] holding them back. Holding them back. Holding them back. And then if you heard someone coming down the trailer at you, even if you weren't wanting him [to] come down the trailer because he is coming behind you and the windows are obscured, you hear him coming the way that [defendant] described, it would make sense that you would momentarily direct your attention away from those dogs and try to get that person back. Do you completely turn around away from those dogs and only focus on that person? No because you still have the dogs."

In questioning the People's theory of guilt, defense counsel reminded the jury that nothing the attorneys said during closing argument was evidence, explaining that their remarks were arguments based on their respective interpretations of the facts. Defense counsel went on to argue that the defense theory (self-defense) was a more reasonable

13

interpretation of the facts, including the size and nature of the stab wound, which defense counsel described as a "nick[] in the chest in the pattern of a sword pointed downward." In so arguing, defense counsel, in response to a sustained objection, emphasized to the jury that what he said during closing argument was not evidence.

In rebuttal, the prosecutor began his remarks by reminding the jury that the comments by the attorneys are argument, not fact, and that the jurors were "the ultimate deciders of fact in this case." The prosecutor went on to argue why, in his view, the evidence supported a finding of first degree murder. In doing so, the prosecutor talked about (among other things) the sword and the mechanics of how it could have been used, arguing that the defendant's self-defense theory did not make sense and was not believable based on the stab wound itself and the evidence at the scene (e.g., significant amount of blood inside the RV, including substantial blood spatter on the front windshield).

Prior to deliberations, the jury received a written copy of the jury instructions. As noted *ante*, the jury found defendant guilty of second degree murder.

B. *Relevant Legal Principles*

" ' "A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such ' "unfairness as to make the resulting conviction a denial of due process." ' " ' [Citations.] ' "Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial." ' [Citations.] . . . Prosecutorial misconduct can result in reversal under state law if there was a 'reasonable likelihood of a more favorable verdict in the absence of the challenged conduct' and under federal law if the misconduct was not 'harmless beyond a reasonable doubt.' " (*People v. Rivera* (2019) 7 Cal.5th 306, 333-334.)

"It is misconduct for a prosecuting attorney to argue beyond the record by stating facts not in evidence. [Citations.] An advocate who does so is essentially offering

14

unsworn testimony not subject to cross-examination. [Citation.] 'However, the prosecution "enjoys wide latitude in commenting on the evidence, including the reasonable inferences and deductions that can be drawn therefrom." ' " (*People v. Nadey* (2024) 16 Cal.5th 102, 188.) The wide latitude given to a prosecutor to vigorously argue his or her case includes making assurances regarding the apparent honesty or reliability of a witness based on the facts in the record and the inferences reasonably drawn from those facts. (*People v. Rodriguez* (2020) 9 Cal.5th 474, 480.) However, while the prosecutor may comment upon the credibility of a witness in the light of all the evidence in the case, it is misconduct for a prosecutor to express his or her personal belief as to the reliability of a witness. (*People v. Rivera, supra*, 7 Cal.5th at p. 336.) " 'Improper vouching occurs when the prosecutor either (1) suggests that evidence not available to the jury supports the argument, or (2) invokes his or her personal prestige or depth of experience, or the prestige or reputation of the office, in support of the argument.' " (*Rodriguez*, at p. 480.)

To prevail on a claim of prosecutorial misconduct based on remarks to the jury, a defendant must show that, " ' "[i]n the context of the whole argument and the instructions" [citation], there was "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." ' [Citation.] If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.' " (*People v. Cortez* (2016) 63 Cal.4th 101, 130.) In conducting this inquiry, appellate courts " 'should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.' " (*Id*. at p. 133.)

C. *Analysis*

We find no prejudicial misconduct. On the record before us, we cannot conclude that the brief and isolated remarks challenged on appeal infected the trial with such

15

unfairness as to make the second degree murder conviction a denial of due process. Nor can we conclude that the challenged remarks rendered the trial fundamentally unfair due to the use of deceptive or reprehensible methods to attempt to persuade the jury. Considering the evidence adduced at trial, the jury instructions, and all the arguments of counsel, there is no reasonable likelihood the jury construed or applied the prosecutor's remarks in an objectionable fashion. Indeed, in making the challenged remarks, the prosecutor did not refer to facts beyond the evidence.

Further, this is not a case where the statements at issue involve reliance on the personal beliefs, honor, or integrity of the prosecutor. A fair reading of the record reveals that the prosecutor did not improperly inject his own experiences and personal beliefs into his argument. Instead, the prosecutor advanced his view that defendant's version of how the stabbing occurred was not credible *based on the facts in evidence and the inferences reasonably drawn therefrom*, including the evidence regarding the vertical shape and downward angle of the fatal stab wound, the blood at the scene, including the significant amount of blood inside the RV (e.g., substantial blood spatter on the front windshield), and the fact that there was no blood outside the RV on the passenger side where defendant claimed the stabbing possibly occurred. And the prosecutor himself emphasized to the jurors that their opinion as to the credibility or believability of defendant (and the other witnesses) was determinative and that the arguments of counsel were not evidence. Defense counsel, for his part, told the jury multiple times that nothing he or the prosecutor said during closing argument was evidence. The jurors were also appropriately instructed that it was up to them alone to judge the evidence and believability of the witnesses and to decide the issues in the case.[6]

---

[6] We recognize that the jury was *not* instructed, pursuant to CALCRIM No. 222, that "[n]othing that the attorneys say is evidence." However, this omission does not alter our conclusion that there was no prejudicial misconduct. (See *People v. Cortez, supra*, 63

16

Under the circumstances presented, we discern no basis for reversal.  Even if the challenged statements amounted to prosecutorial misconduct, which we do not find, defendant suffered no prejudice under the federal or state standard.[7]

## DISPOSITION

The trial court's true findings on the prior serious felony enhancement and strike prior allegations are reversed.  Defendant's sentence is vacated and the matter is remanded for further proceedings, including a full resentencing.  On remand, the People may elect to retry, under current law, the allegation that defendant's prior gang-related

---

Cal.4th at p. 131 [observing that " 'juries generally understand that counsel's assertions are the "statements of advocates" ' "].)  As we have discussed, the jury was advised multiple times during closing argument that the statements/arguments of the attorneys were not evidence.

[7] Given our conclusion that there was no prejudicial prosecutorial misconduct, we need not and do not consider the Attorney General's contention that defendant forfeited his prosecutorial misconduct claim.

conviction (§ 186.22, subd. (a)) qualifies as a serious felony and strike prior for purposes of the three strikes law and a prior serious felony enhancement.  In all other respects, the judgment is affirmed.

/s/

Duarte, Acting P. J.

We concur:

/s/

Mesiwala, J.

/s/

Wiseman, J.*

---

*  Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.